UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------- x
TYJUAN REED,                                                        :
                                                                    :
                   Plaintiff,                                    :
                                                                    :
                                                                    :   **INITIAL REVIEW**
      -against-                                                   :   **ORDER**
                                                                    :
DOES 1-6 and ROBERT MARTIN,                                         :   3:24-cv-1359 (KAD)
                                                                    :
                   Defendants.                                    :
------------------------------------------------------------------- x

      Plaintiff TyJuan Reed is an unsentenced inmate currently housed at Garner Correctional Institution within the custody of the Connecticut Department of Correction ("DOC").[1] He filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 to assert individual and official capacity claims for violation of his constitutional rights against seven Doe Defendants who work at Corrigan-Radgowski Correctional Center ("Corrigan"). The Court dismissed this case without prejudice because Plaintiff did not comply with the Court's order to provide materials in support of his application to proceed *in forma pauperis* ("IFP"). Thereafter, Plaintiff provided the materials required to support his IFP application and an amended complaint, ECF Nos. 16 & 17, and the Court reopened his case and granted his motion to proceed IFP. ECF Nos. 18 & 20.

      The Court now considers whether Plaintiff's amended complaint against the six Doe Defendants and Warden Martin alleges any plausible claims against Defendants in their individual and official capacities.

      The Prison Litigation Reform Act (PLRA) requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a

---

[1] The Connecticut DOC website reflects that Plaintiff was admitted to DOC on July 17, 2023, and is still unsentenced. *See Inmate Information*, Conn. Dep't of Corrs., at http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=388506. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (Court may "take judicial notice of relevant matters of public record").

governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

I. **FACTUAL BACKGROUND**

While the Court does not set forth all of the facts alleged in Plaintiff's complaint, it summarizes his basic factual allegations here to give context to its rulings below.

Plaintiff alleges (1) Doe 1 was a Correctional Transport Driver, (2) Doe 4 was a Correctional Unit Driver, (3) Does 2, 3, 5 and 6 were Correctional Officers, and (4) Defendant Martin was the Acting Warden at Corrigan at the time relevant to the Amended Complaint. *See* Am. Compl., ECF No. 17, ¶ 4; *id.* ¶ 31 (referring to Martin as the Acting Warden).

On March 16, 2023, Plaintiff was put in transfer restraints by Transport Unit Driver Doe 1 with the assistance of Correctional Officer Does 2 and 3. *Id.* ¶¶ 12–13. Other inmates for the same transport were also placed in restraints. *Id.* ¶ 14.

Transport Unit Driver Doe 1 escorted the inmates to the "FH Corridor" and told the inmates to wait in the corridor. *Id.* ¶¶ 15-16. He left the inmates in restraints unattended while he entered the control room. *Id.* ¶ 17.

Another inmate—who was being supervised by Correction Officer Does 2 and 3 and Correctional Unit Driver Doe 4—came out of the Admitting and Processing area without restraints and assaulted Plaintiff. *Id.* ¶¶ 19–20. Plaintiff was found a short time later on the floor bleeding and unconscious. *Id.* ¶ 21.

Plaintiff was transported to the Backus Hospital where Correction Officer Does 5 and 6 provided false information to the hospital staff that prevented Plaintiff from receiving an assessment for proper treatment for his assault injuries. *Id.* ¶¶ 22–24.  Plaintiff was diagnosed with a traumatic brain injury and received stitches in his lip. *Id.* ¶¶ 25–26.  Plaintiff's foot and leg were not evaluated. *Id.* ¶ 27.

Corrigan correctional staff failed to notify Plaintiff's emergency contact about his being in hospital. *Id.* ¶ 28.  A Corrigan inmate notified Plaintiff's family that he was in the hospital with life-threatening injuries. *Id.* ¶ 29.  Warden Martin also provided false information to Plaintiff's emergency contact and his mother. *Id.* ¶ 31.

After Plaintiff's emergency contact bonded him out, Plaintiff was transferred to Waterbury Hospital where he remained until March 23, 2023. *Id.* ¶¶ 33–34.  Plaintiff was later taken home where nurses made daily visits. *Id.* ¶ 35.

## II. DISCUSSION

Plaintiff's Amended Complaint raises claims of indifference to his safety and medical needs.  In light of Plaintiff's allegation indicating that his emergency contact bonded him out of DOC custody, the Court will consider for purposes of this initial review that Plaintiff is a pretrial detainee.  Thus, Plaintiff's claims of deliberate indifference to his health and safety are governed by the Fourteenth Amendment, rather than the Eighth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (deliberate indifference); *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015) (excessive force); *see also Charles v. Orange County*, 925 F.3d 73, 85–86 (2d Cir. 2019) (pretrial detainee medical indifference claims fall under the Fourteenth Amendment).

Plaintiff's Eighth Amendment violation claims are therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Court turns next to Plaintiff's Fourteenth Amendment claims. Preliminarily, and applicable to all Defendants, Plaintiff must allege facts to reflect a defendant was personally involved in the alleged constitutional violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (quotation omitted)). This is true with respect to supervisory officials as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (holding that a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" in order to hold a state official liable for damages under § 1983, and that "it is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had").

<u>Deliberate Indifference to Safety/Failure to Protect</u>

Plaintiff maintains that Transport Unit Driver 1 was indifferent to his safety by leaving him unattended in restraints in the corridor. Am. Compl., ECF No. 17, ¶ 39. He claims Correction Officer Does 2 and 3, and Correctional Unit Driver Doe 4, permitted the inmate under their supervision to attack Plaintiff.

"[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Walker v. Schult*, 717 F.3d 119, 128 (2d Cir. 2013) (alteration in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). However, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. A claim that a correctional officer failed to protect an inmate from attack rises to the level of a constitutional violation only when the

4

officer acted with "'deliberate indifference' to a substantial risk of serious harm to an inmate." *Id.* at 828.

A claim that a prison official has acted with deliberate indifference under the Fourteenth Amendment involves analysis of two prongs: (1) an objective prong, which requires a plaintiff to show that "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process"; and (2) a subjective or "*mens rea*" prong, which requires a plaintiff to show that the defendant "acted with at least deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29. With respect to the first prong of a deliberate indifference claim, the plaintiff must show that the conditions he experienced "either alone or in combination, pose[d] an unreasonable risk of serious damage to his health." *Id.* at 30 (quotation omitted). With respect to the second prong, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. Negligence is insufficient to satisfy this component. *Id.* at 36 (holding that detainee must show that defendant acted recklessly or intentionally, not merely negligently).

Plaintiff's allegations provide no suggestion that Doe 1 had any awareness that Plaintiff would or could be subjected to assault from another inmate when he left him in the corridor. Doe 1 may have acted negligently, but negligent conduct does not support a deliberate indifference claim of constitutional dimension. *See id.* Accordingly, Plaintiff has not alleged a plausible Fourteenth Amendment claim against Doe 1.

Plaintiff provides few facts about the circumstances of the assault and conduct by Correction Officer Does 2 and 3 and Correctional Unit Driver Doe 4. Nonetheless, the alleged

facts suggest that Does 2, 3, or 4 may plausibly have been in a position to know that Plaintiff was at risk of being attacked by the inmate under their supervision, and that they could have prevented or protected Plaintiff from the attack. *See Conquistador v. Adamaitis*, No. 3:19-CV-430, 2021 WL 810361, at *4 (D. Conn. Mar. 3, 2021) ("[C]ourts have found sufficiently serious conditions where correctional officers simply stand by and allow an inmate-on-inmate attack to proceed." (citing *Davidson v. Cannon*, 474 U.S. 344, 348 (1966))) (collecting cases). Accordingly, the Court will permit Plaintiff's claims of indifference to his health and safety under the Fourteenth Amendment to proceed for further development against Correction Officer Does 2 and 3, and Correctional Unit Driver Doe 4 in their individual capacities.

<u>Medical Interference</u>

Plaintiff alleges that he did not receive proper assessment and treatment for his injuries because Correction Officer Does 5 and 6 "deliberately" provided false information to the hospital staff. Am. Compl., ECF No. 17, ¶¶ 23–27. Correctional staff may act with indifference to an inmate's medical needs by denying or delaying access to medical care or interfering with medical treatment once it was prescribed. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (prison guards act with deliberate indifference by intentionally denying, delaying, or interfering with inmate's medical treatment in violation of Eighth Amendment); *Atutis v. Harder,* No. 9:21-CV-715 (DNH/TWD), 2021 WL 12314320, at *6 (N.D.N.Y. July 20, 2021) (non-medical staff may violate Fourteenth Amendment for indifference to medical needs by denying, delaying or interfering with medical treatment). The Fourteenth Amendment standard set forth in *Darnell* applies also to a pretrial detainee's claims involving a denial in the provision of medical treatment to a pretrial detainee. *See, e.g.*, *Roice v. County of Fulton*, 803 F. App'x 429, 430, 432 (2d Cir.

6

2020) (summary order) (applying Fourteenth Amendment *Darnell* standard to pretrial detainee's medical indifference claims).

For purposes of initial review, the Court concludes that Plaintiff's complaint sufficiently suggests that he had serious need for medical treatment for his assault injuries and that Does 5 and 6 acted intentionally and recklessly to prevent his access to necessary medical treatment. Accordingly, the Court will permit Plaintiff to proceed on his Fourteenth Amendment claims against Officer Does 5 and 6 in their individual capacities for further development of the record.

Warden Martin

Plaintiff provides few facts about Warden Martin. He alleges only that Warden Martin provided "false insight" about his health to his mother and emergency contact. Am. Compl., ECF No. 17, ¶ 31. Plaintiff claims that he suffers "emotional and mental anguish" as a result of Martin's conduct. *Id.* ¶ 50. Even construing Plaintiff's allegations as a Fourteenth Amendment claim of deliberate indifference, Plaintiff has not alleged sufficient facts to support an inference that Warden Martin acted with any awareness that his conduct posed a serious risk of harm to Plaintiff's mental health.

Nor can Plaintiff proceed against Warden Martin for his liability as a supervisor. In *Tangreti*, the Second Circuit explained that "there is no special [pleading] rule for supervisory liability," and "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 983 F.3d at 618. Because Plaintiff has not alleged any facts to suggest that Warden Martin had any direct involvement in a violation of Plaintiff constitutional rights, Plaintiff has failed to state plausible grounds for relief against him.

Accordingly, Plaintiff's Fourteenth Amendment claim against Warden Martin is dismissed as not plausibly alleged.

### C. Official Capacity Relief

Plaintiff seeks official capacity relief in the form of a declaratory judgment and an injunction. Am. Compl., ECF No. 17, at 8–9.[2] Plaintiff may only proceed for injunctive or declaratory relief against a defendant in his or her official capacity if he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Here, Plaintiff's allegations describe violations of his rights that occurred in the past. In addition, Plaintiff is no longer housed at Corrigan. Notice of Change of Address, ECF No. 22; *see Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility). Accordingly, any claims brought against any of the Defendants in their official capacity are dismissed.

### III. CONCLUSION

The Court enters the following orders:

(1) The case shall proceed on Plaintiff's individual capacity claims for (a) a Fourteenth Amendment violation arising out of deliberate indifference to his health and safety against Correction Officer Does 2 and 3, and Correctional Unit Driver Doe 4; and (b) Fourteenth Amendment violation arising out of deliberate indifference to his medical needs against Correction Officer Does 5 and 6.

---

[2] Although not clear, to the extent he also asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

All other claims, including official capacity claims, are DISMISSED without prejudice. The Clerk of the Court is directed to terminate Doe 1 and Warden Martin as defendants.

The case may <u>not</u> proceed to service on the Doe defendants because the Court cannot serve the unidentified defendants without their names. Plaintiff may file a Notice, on or before **January 10, 2025**, to identify at least one Doe defendant by name.

If Plaintiff wishes to correct the deficiencies of his claims as identified by this Order, he may also file a second amended complaint by **January 10, 2025**. Plaintiff is advised that any second amended complaint will completely replace the prior complaints in the action, and that no portion of any prior complaint shall be incorporated into his second amended complaint by reference.

**SO ORDERED** this 22nd day of November, 2024, at Bridgeport, Connecticut.

*/s/ Kari A. Dooley*_____
Kari A. Dooley
United States District Judge